**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ADAM P. HAMMOND,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:10-CV-1071** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **CITIBANK, N.A.,** *et al.,* | : | **Magistrate Judge Mark R. Abel** |
| | : | |
| **Defendants.** | : | |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Adam Hammond brings this action for claims arising out of a state foreclosure action. Defendants Citibank, N.A., and Wells Fargo Bank, N.A. now move to dismiss all counts against them (Doc. 15). For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

### II. BACKGROUND

#### A. Factual Background

The Plaintiff resides in Licking County, Ohio, at 3309 Mounts Road, Alexandria, Ohio. On April 30, 2010, Defendant Citibank initiated a foreclosure action against the Plaintiff in the Licking County Court of Common Pleas. The Plaintiff did not file an answer or otherwise respond to the Defendant's complaint, and Defendant Citibank moved for default judgment on June 7, 2010.

In support of its motion, Defendant Citibank introduced an affidavit by Anne Neeley, who stated that she was a vice president of loan documentation with Defendant Wells Fargo, the servicing agent for Defendant Citibank. Neeley swore that she had personal knowledge of the

Plaintiff's loan, that the loan was in default, and that the principal balance owed was $207,192.24.

The state court granted the motion for default judgment on June 7, 2010. The property at 3309 Mounts Road was sold at a sheriff's sale on October 20, 2010; Defendant Citibank purchased the property. The state court confirmed the sale on November 15, 2010.

The Plaintiff alleges that Neeley was a "robo-signer," a person whose job is to sign affidavits and other legal documents used in foreclosures *en masse*. According to the Plaintiff, robo-signers may sign more than 10,000 such documents per month. To keep up this pace, robo-signers frequently sign a document without reading it and outside of the presence of a notary. The Plaintiff alleges that a number of Neeley's statements in her affidavit are false.

The Ohio Attorney General has initiated a lawsuit in state court challenging the widespread use of robo-signers. In a letter sent to the Ohio Common Pleas judges, the Attorney General named Wells Fargo as a bank known to rely heavily on robo-signers in its foreclosure actions.

## B. Procedural Background

The Plaintiff filed suit before this Court on November 29, 2010 (Doc. 3). He brings fifteen causes of action: (I) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, against both Defendants; (II) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, against both Defendants; (III) violation of the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code Ann. §§ 1345 *et seq.*, against both Defendants; (IV) common law fraud against both Defendants; (V) abuse of process against Defendant Citibank; (VI) civil conspiracy against both Defendants; (VII) declaratory judgment that the foreclosure action is null and void against Defendant Citibank; (VIII) rescission of the

2

promissory note against Defendant Citibank; (IX) violation of the Real Estate Settlement

Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* against both Defendants; (X) emergency

temporary and permanent injunctive relief against Defendant Citibank[1]; (XI) negligent

supervision against both Defendants; (XII) breach of the covenant of good faith and fair dealing

against both Defendants; (XIII) violation of the Fair Debt Reporting Act, 15 U.S.C. §

1681(s)(2)(b), against Defendant Citibank; (XIV) wrongful foreclosure against Defendant

Citibank; and (XV) libel against Defendant Citibank.

The Defendants filed their Motion to Dismiss on January 1, 2010 (Doc. 15). The

Defendants argue that several counts should be dismissed for lack of jurisdiction, that most are

barred by res judicata, and that the remainder should be dismissed for failure to plead sufficient

facts under Rule 12(b)(6).[2] The matter is now ripe for decision.

### III. STANDARD OF REVIEW

#### A. Rule 12(b)(1)[3]

Where a defendant raises the issue of lack of subject matter jurisdiction pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving

---

[1] The Plaintiff seeks an injunction barring his eviction. The Plaintiff has not filed a motion under Rule 65 for either a temporary restraining order or a preliminary injunction.

[2] The Defendants additionally assert that Counts III (OCSPA), (IV (common law fraud), and XI (negligent supervision) are barred by the doctrine of witness immunity. As discussed *infra*, the Court has concluded that none of these claims survives the Rule 12(b)(6) analysis, so a discussion of witness immunity is unnecessary.

[3] The Plaintiff contends that the Court may not consider the Defendants' jurisdictional arguments because the Defendants did not identify Rule 12(b)(1) as the basis for their motion. The Plaintiffs rely on Local Rule 7.2(a). That rule provides that all motions be accompanied "by a memorandum in support thereof . . . with citation of authorities relied upon." S.D. Ohio Civ. 7.2. The Defendants' memorandum in support of its motion clearly cited the legal basis for its jurisdictional arguments despite not referencing Rule 12(b)(1). The Court will not construe the local rule as narrowly as the Plaintiff suggests. The Court can, moreover, raise the matter of subject matter jurisdiction *sua sponte. In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005).

jurisdiction in order to survive the motion to dismiss. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "[M]otions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the sufficiency of a complaint, and, when considering the motion, the court must view the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id*. A factual attack is a challenge to the factual existence of subject matter jurisdiction. *Id*. In a factual attack "the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

### B. Rule 12(b)(6)

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), 'a…complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Klusty v. Taco Bell Corp.*, 909 F.Supp. 516, 520 (S.D. Ohio, 1995) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The plaintiff has satisfied Rule 12(b)(6) if he pled enough facts "to state a claim to relief

4

that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Additionally, the Court must accept as true all factual allegations contained in the complaint, and the complaint must be construed in the light most favorable to the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975).

The Court may only consider evidence contained within the pleadings without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). Exhibits to the pleadings are "part of the pleadings for all purposes." Fed. R. Civ. P. 10(c). Documents not attached to a plaintiff's complaint but introduced by the defendant on a motion to dismiss will be considered as part of the pleadings if "'they are referred to in the plaintiff's complaint and are central to [his] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also City of Monroe Emp. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 659 (6th Cir. 2005) (relying on *Weiner*). The Court may also consider "materials that are public records or otherwise appropriate for taking judicial notice without converting a Rule 12(b)(6) motion to a Rule 56 motion." *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 925 (N.D. Ohio 2009) (citing *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

## IV. LAW AND ANALYSIS

### A. *Rooker-Feldman* Doctrine

The Defendants argue that the Court lacks subject matter jurisdiction over Counts VII (declaratory judgment), X (injunctive relief), and XIV (wrongful foreclosure) under the *Rooker-Feldman* doctrine. The Plaintiff argues that the basis for each of these claims is the Defendants' filing of the fraudulent affidavit, placing them outside the *Rooker-Feldman* doctrine.

Interpreting a statute "designed to prohibit end-runs around state court judgments," the United States Supreme Court in *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) held that lower federal courts lacked jurisdiction to conduct appellate review of state court judgments. *Kovacic v. Cuyahoga County Dep't of Children & Family Servs*., 606 F.3d 301, 308 (6th Cir. 2010); s*ee also* 28 U.S.C. § 1257(a). The *Rooker-Feldman* doctrine, as it has come to be known, "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). But "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id*. at 293.

The Sixth Circuit has "explained that the pertinent inquiry after *Exxon* is whether the 'source of the injury' upon which plaintiff basis his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state court judgment." *Kovacic*, 606 F.3d at 309 (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). This circuit's jurisprudence holds that "*Rooker-Feldman* does not bar a federal-court challenge to an individual's improper conduct during a prior state court proceeding." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs*., 241 F. App'x 285, 288 (6th Cir. 2007).

The Defendants contend that because Counts VII, X, and XIV seek a ruling on the validity of the state court judgment, the Court lacks jurisdiction over them under *Rooker-Feldman*. The Court, however, must look to the source of the injury, not the remedy, to

6

determine whether it has subject matter jurisdiction over a claim. *See Kovacic*, 606 F.3d at 309. In the case *sub judice*, the injury of which the Plaintiff complains is the alleged fraud perpetrated upon the state court by the filing of a false affidavit, not the state court judgment itself. That the validity of the affidavit and the validity of the state court judgment are intertwined is not determinative. *See id.*

*McCormick* is instructive. In that case, the plaintiff was involved in divorce proceedings and related litigation in which the state courts issued unfavorable rulings concerning her interest in a piece of real property. *McCormick*, 451 F.3d at 387–88. The Plaintiff filed two suits in federal court against parties in the state court litigation raising various procedural defects in those cases, including fraud. *Id.* at 388. The Sixth Circuit considered whether her claims fell within the *Rooker-Feldman* doctrine as narrowed by *Exxon*, concluding that the federal courts had jurisdiction over all but two of the claims. *Id.* at 392–95. The successful claims were those that did not allege "that the state court judgments themselves [were] unconstitutional or in violation of federal law." *Id.* at 392. Notably, the successful claims included declaratory judgments that the state court rulings were wrongful or void. *Id.* at 388.

So, too, in the case *sub judice*, does the Court have jurisdiction to rule on the validity of the state court foreclosure action incident to its ruling on the fraudulent nature of the affidavit. *Accord Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (holding *Rooker-Feldman* did not bar plaintiff's FDCPA claim that defendant obtained a favorable state court judgment through fraudulent affidavit); *Brown v. First Nationwide Mortgage Corp.*, 206 F. App'x 436, 440 (6th Cir. 2006) (per curiam) (holding *Rooker-Feldman* did not bar plaintiff's claims based on foreclosure obtained through defendants' fraud); *Foster v. D.B.S. Collection Agency, et al.*, 463 F. Supp. 2d 783, 798 (S.D. Ohio 2006) (holding that

*Rooker-Feldman* doctrine did not bar claims under the FDCPA based on illegal actions defendants took to obtain default judgment against plaintiff); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (holding that *Rooker-Feldman* did not bar plaintiffs' attempt to set aside state court judgments based on defendants' extrinsic fraud).

The cases upon which the Defendants rely are not to the contrary. *See Suggs v. U.S. Bank Nat'l Ass'n*, No. 1:10 CV 79, 2010 U.S. Dist. LEXIS 62768 (N.D. Ohio June 24, 2010); *Westerfeld v. First Horizon Home Loans*, NO. 5:10 CV 896, 2010 U.S. Dist. LEXIS 46016 (N.D. Ohio May 7, 2010). First, neither of them is binding upon this Court, as is *McCormick*. Second, the district courts in those cases did not apply the rule laid out in *Exxon* or the Sixth Circuit cases interpreting it. The Court therefore finds them inapposite to the case *sub judice*.

Because *Rooker-Feldman* is inapplicable to the Plaintiff's claims under controlling Sixth Circuit law, the Court concludes that it has subject matter jurisdiction. The Court accordingly **DENIES** the Defendant's 12(b)(1) motion to dismiss Counts VII, X, and XIV.

## B. Preclusion

The Defendants argue that Counts I (FDCPA), VII (declaratory judgment), VIII (rescission), X (injunctive relief), XII (breach of covenant of good faith and fair dealing), and XIV (wrongful foreclosure) are barred by issue or claim preclusion.[4]

Federal courts traditionally adhere to the preclusion doctrines of collateral estoppel, also known as issue preclusion, and res judicata, also known as claim preclusion. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and

---

[4] In their supportive memorandum, the Defendants' state that "most (if not all) of the claims" are barred under this theory. The Defendants are more specific in the section titled "Summary of Argument." There, they identify the basis for their challenges to each of the counts. They list preclusion as a basis for dismissal only of Counts I, VII, VIII, X, XII, and XIV. The Court will therefore proceed to apply the preclusion doctrines to these claims.

decided." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Similarly, "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated because of a determination that it should have been advanced in an earlier suit." *Id.* "[W]hen asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citing *Migra*, 465 U.S. at 81). Because the state court judgment at issue is from Ohio, Ohio law controls in this case.

### *1. Issue Preclusion*

To support a claim of issue preclusion, a party must prove three elements: (1) the precise fact or issue was "actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction, and (3) . . . the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *State ex rel. Davis v. Public Emples. Ret. Bd.*, 899 N.E.2d 975, 982 (Ohio 2008) (citing *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994)).  An issue has not been actually litigated "'[i]n the case of a judgment entered by confession, consent, or default.'" *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27, cmt. e (1982)).

The Defendants contend that the issue of the fraudulent affidavit has been actually litigated in state court, a court of competent jurisdiction, in the Defendants' favor against the Plaintiff. According to copies of documents from the state court litigation attached to the Defendants' motion,[5] the Plaintiff asserted in state court that the affidavit was fraudulent in a

---

[5] The Court deems these materials to be within the Court's purview under Rule 12(b)(6). The Plaintiff's complaint referenced the state court action and included a copy of the affidavit. Not only are the additional documents the Defendants provide "central" to the Plaintiffs' claim, *Weiner*, 108 F.3d at 89, but they are matters of public record, *Whittiker*, 605 F. Supp. 2d at 925.

motion to set aside the foreclosure judgment. The state court rejected the Plaintiff's motion in its entirety in a brief order. The Plaintiff did not appeal.

Upon close inspection, the Court cannot conclude that issue preclusion bars the Plaintiff from litigating whether the affidavit was fraudulent. The Plaintiff brought his motion challenging the veracity of the affidavit in state court under Civil Rule 60(B). The Ohio Supreme Court has held that "[p]ursuant to Civ. R. 60(B)(5), a court *in appropriate circumstances may* vacate a judgment vitiated by a fraud upon the court." *Coulson v. Coulson*, 448 N.E.2d 809, 810 (Ohio 1983) (syllabus) (emphasis added). Under this rule, a finding of fraud is not dispositive of the outcome of a Rule 60(B) motion. The state court may have rejected the Plaintiff's motion not because it did not find that the affidavit was fraudulent but because it did not find that other circumstances warranted disrupting its earlier judgment. Because the state court did not explain the basis for its rejection of the Plaintiff's motion, and because there was an alternative basis for the court's ruling, it cannot be said with certainty that the issue was actually passed upon by the state court. *Cf. Todd v. Weltman Weinberg & Reis Co., LPA*, No. 1:03cv171, 2008 U.S. Dist. LEXIS 11350, *18 (S.D. Ohio Feb. 14, 2008) (holding that issue preclusion under Ohio law did not bar relitigation of truthfulness of affidavit because issue was not necessary to state court judgment). Issue preclusion therefore does not act as a bar to the Plaintiff's claims before this Court, and the Defendants' motion on this ground is **DENIED**.

### 2. Claim Preclusion

Under Ohio law, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Township*, 653 N.E.2d 226, 227 (Ohio 1995)

(syllabus). A "'transaction' is defined as a 'common nucleus of operative facts.'" *U.S. Bank Nat'l Ass'n v. Gullotta*, 899 N.E.2d 987, 991 (Ohio 2008) (quoting *Grava*, 653 N.E.2d at 229).

The subject matter of the foreclosure action was the liability of the parties on the Plaintiff's mortgage. The subject matter of the instant suit, in contrast, is the liability of the Defendants for the submission of the allegedly fraudulent affidavit. These two suits, then, do not arise out of the same nucleus of operative facts. *Accord Foster*, 463 F.Supp.2d at 797 (holding that state debt collection action did not, under Ohio claim preclusion law, bar federal action challenging defendants' conduct in the state action because two cases arose out of different operative facts); *Todd*, 2008 U.S. Dist. LEXIS 11350 at *19 (relying on *Foster* and holding that state debt collection case did not trigger claim preclusion under Ohio law where federal FDCPA case was based on unlawful misrepresentations in the state case). *Cf. Quality Ready Mix, Inc. v. Mamone*, 520 N.E.2d 193, 197 (Ohio 1988) (ruling that prior judgment on rights pertaining to real property did not bar subsequent action relating to the same property because "the obligations sought to be enforced by the two actions are separate and distinct"). Because the Plaintiff's federal action does not arise out of the same transaction or occurrence as the state foreclosure action, claim preclusion does not now bar the Plaintiff's claims based on the fraudulent affidavit.[6] The Defendants' motion on this ground is accordingly **DENIED**.

---

[6] The Court notes that the Plaintiff's claims fail the test in Ohio for bringing compulsory counterclaims. A party must bring or forfeit a counterclaim where the claim "exist[s] at the time of serving the pleading" and "arise[s] out of the transaction or occurrence that is the subject matter of the opposing claim." *Geauga Truck & Implement Co. v. Juskiewicz*, 457 N.E.2d 827, 829 (Ohio 1984). The Plaintiff's claims based on the fraudulent affidavit had not accrued at the time the Defendants initiated the foreclosure action, lending additional support to the Court's conclusion that the Plaintiff's current claims do not arise out of the same nucleus of operative facts as the claims in the state foreclosure action.

### C. Count I (FDCPA)[7]

The Plaintiff alleges that the Defendants made false and misleading representations in violation of 15 U.S.C. § 1692e and engaged in unfair practices in violation of 15 U.S.C. § 1692f.

The FDCPA was designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Among other things, the FDCPA establishes a general prohibition against the use of "[a]ny false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Where a debt collector's allegedly deceptive communication is involved, "a court must determine whether the least sophisticated consumer would be deceived by the collection agency's [communications] . . . ." *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992) (internal quotations omitted).

First, the Defendants argue that the Plaintiff's claim fails under *Twombly*. This Court disagrees. Section 1692e prohibits a "debt collector" from making "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt." It is clear from the complaint that the Plaintiff intends to prove that the submission of the allegedly fraudulent affidavit constitutes a violation of the FDCPA. The complaint also alleges the roles that each Defendant played in the underlying foreclosure action. These facts are sufficient under Rule 12(b)(6) for both claims. *See Riley v. Giguiere*, 631 F.

---

[7] The Plaintiff elected not to respond to the Defendants' arguments regarding the potential deficiencies with the individual claims because the Defendants relied upon extrinsic evidence. The extrinsic evidence the Defendants offered, though, went to their Rule 12(b)(1) motion, not their 12(b)(6) motion, and there is nothing improper in reaching these arguments at this stage.

Supp. 2d 1295, 1309 (E.D. Cal. 2009) (denying summary judgment on claim that defendant violated § 1692f and § 1692e when it knew or had reason to know that it failed to properly serve plaintiff in detainer action).

Second, the Defendants contend that the FDCPA does not apply to them. The FDCPA governs the actions of "debt collectors," defined as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). The Defendants argue that, under these definitions, Defendant Wells Fargo is not a "debt collector" under § 1692a(6)(F)(ii) because it is the originator of the debt, and Defendant Citibank is not a "debt collector" under § 1692a(6)(F)(iii) because the Plaintiff has not alleged that the debt was in default at the time of its assignment.

The Defendants are correct. "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *see also Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (citing *Perry* with approval). Defendant Wells Fargo is a creditor, not a debt collector, and may not be sued under the FDCPA. *See Nool v. Home Servicing*, 653 F. Supp. 2d 1047, 1052–53 (E.D. Cal. 2009) (granting motion to dismiss FDCPA claims against defendant mortgage loan servicer because defendant was not a "debt collector"). Defendant Citibank as an assignee may only be liable under the FDCPA if the

loan was in default at the time of the assignment, which fact has not been pled in the complaint. *See Belin v. Litton Loan Servicing, LP*, 2006 WL 1992410, *3 (M.D. Fla. July 14, 2006) (finding that "the determination as to whether Litton is a debt collector turns on whether Litton acquired the loan as a debt in default and whether its collection activities were based on that understanding"). *Cf. Dowling v. Litton Loan Servicing, LP*, No. 2:05-CV-0098, 2006 U.S. Dist. LEXIS 87098, *12–14 (S.D. Ohio Dec. 1, 2006) (Marbley, J.) (holding that rule that loan servicer is not a "debt collector" unless the loan is in default has an exception where the allegedly misleading statements concerned the loan's status).

Because the Defendants are not "debt collectors" as contemplated by § 1692a(6)(F), the Court **GRANTS** their motion to dismiss Count I.

### D. Count II (RICO)

The Defendants argue that the Plaintiff failed to allege facts showing the existence of essential elements of his RICO claim.

Private parties who have been injured by a violation of § 1962 of the RICO statute may bring a civil suit in federal court to collect damages. 18 U.S.C. § 1964(c); *see also Beck v. Prupis*, 529 U.S. 494, 496 (2000). A civil RICO claim has four elements: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

The Defendants contend that the Plaintiffs have not pled the existence of a pattern of racketeering. "A 'pattern of racketeering activity' is defined by statute as requiring at least two acts of racketeering activity" as predicate offenses. *Van Dorn Co., Central States Can Co. Div. v. Howington*, 623 F.Supp. 1548, 1553 (N.D. Ohio 1985) (citing 18 U.S.C. § 1961(5)); *see also*

*Moon*, 465 F.3d at 723. The predicate offenses must be ones "indictable under" a number of

federal criminal statutes. 18 U.S.C. § 1961(1). In the case *sub judice*, the Plaintiff has not pled

the existence of any predicate offenses. The Court must accordingly **GRANT** the Defendants'

motion to dismiss Count II.

### E. Count III (OCSPA)

The Ohio Consumer Sales Practices Act is remedial legislation and is to be construed

liberally. *Renner v. Procter & Gamble Co.*, 561 N.E.2d 959, 965–66. (Ohio 1988). This

legislation prohibits a "supplier" from committing unfair or deceptive acts in a "consumer

transaction." Ohio Rev. Code Ann. § 1345.02(A). A "supplier" is "a seller, lessor, assignor,

franchisor, or other person engaged in the business of effecting or soliciting consumer

transactions." Ohio Rev. Code Ann. § 1345.01(A).[8] A "consumer transaction" includes transfers

of goods and services generally but excludes transactions between financial institutions and their

customers other than "transactions in connection with residential mortgages between loan

officers, mortgage brokers, or nonbank mortgage lenders and their customers." *Id.*

The Defendants argue that they are national banks not subject to the OCSPA. "Under

Ohio law, a court must strictly construe exceptions or exemptions to a general law . . . ."

*Dowling*, 2006 U.S. Dist. LEXIS 87098, at *44 (citing *Pioneer Linen Supply Co. v. Evatt*,

N.E.2d 711, 712 (Ohio 1946)).[9] Section 1345.01(A) is clear that only "nonbank mortgage

---

[8] The definition of "supplier" excludes "an assignee or purchaser of the loan for value" where the "consumer transaction is in connection with a residential mortgage." Ohio Rev. Code Ann. § 1345.01(C). Assignees and purchasers for value are subject to liability through O.R.C. § 1345.091 so long as the alleged "violation was committed by the assignee or purchaser." In the case *sub judice*, the Plaintiff claims that the Defendants colluded in the submission of the fraudulent affidavit, triggering § 1345.091. Thus the exclusion of assignees and purchasers from the definition of "supplier" does not absolve either Defendant of liability in this case.

[9] In *Dowling*, this Court held that mortgage loan servicers were "suppliers" within the meaning of the OCSPA. 2006 U.S. Dist. LEXIS 87098, at *44. *See also Jent v. BAC Home Loans Servicing,*

lenders" may be subject to the OCSPA. As financial institutions, the Defendants are exempt from

liability under the OCSPA, and the Court must **GRANT** their motion to dismiss Count III.

### G. Count IV (Fraud)

The Defendants challenge the Plaintiff's pleading of all of the necessary elements of

common law fraud. A fraud claim under Ohio law has six elements: "(1) a representation or fact

or, where there is a duty to disclose, a concealment; (2) which is material to the transaction; (3)

made with knowledge of its falsity or with such utter disregard and recklessness that knowledge

of its falsity may be inferred; (4) with the intent to mislead another in relying on it; (5) justifiable

reliance; and (6) injury proximately caused by the reliance." *Moses v. Sterling Commerce Am.,*

*Inc.*, 2002 Ohio 4327, P15 (Ohio Ct. App. Aug. 15, 2002) (citing *Williams v. Aetna Fin. Co.*, 700

N.E.2d 859, 868 (Ohio 1998)).

A plaintiff may only bring a fraud claim where the defendant made the representations to

induce the plaintiff, not a third party, to act upon them. *Wells v. Cook*, 16 Ohio St. 67 (Ohio

1865) (syllabus); *Flandermeyer v. Cooper*, 85 Ohio St. 327 (Ohio 1912) ("The true policy of the

law in this state is that no recovery can be had for an indirect injury, at the common law.");

*Moses*, 2002 Ohio at P15 ("A plaintiff fails to state a valid cause of action for fraud when he

alleges that a third-party relied on misrepresentations made by a defendant and that he suffered

injury from that third-party's reliance."); *Hayes v. Computer Assocs. Int'l, Inc.*, No.

3:02CV7452, 2003 U.S. Dist. LEXIS 10712, *17 (N.D. Ohio June 24, 2003) ("In order for

representations to have the requisite fraudulent intent, it must have been intended that they

---

*LLC*, NO. 1:10-CV-00783, 2011 U.S. Dist. LEXIS 79652, *10–11 (S.D. Ohio July 21, 2011)
(adopting *Dowling*'s analysis). *But see Anderson v. Barclays Capital Real Estate, Inc.*, No.
3:09CV2335, 2010 U.S. Dist. LEXIS 68327, 2010 WL 2541807, *25–26 (N.D. Ohio 2010)
(certifying the question of whether a loan servicer is a "supplier" to the Ohio Supreme Court). In
*Dowling*, unlike in the case *sub judice*, the exemption for financial institutions was not at issue as
the defendant conceded it did not meet that definition. 2006 U.S. Dist. LEXIS 87098, at *43.

should be acted on by the party complaining of fraud.") (citing Ohio law). In the case *sub judice*, the Plaintiff has alleged only that the Defendants submitted a fraudulent affidavit on the state court. There is no allegation that the statements that Neeley had personal knowledge of the Plaintiff's case in any way induced or were intended to induce the Plaintiff, not the court, to act. For this reason, the Court must **GRANT** the Defendants' motion to dismiss Count IV.

### H. Count V (Abuse of Process)

The Ohio tort of abuse of process has three elements: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 115, 118 (Ohio 1994). There is no liability for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at 118 n.2 (quoting Prosser & Keeton, *The Law of Torts* § 121, at 898 (5th ed. 1984)). As the Ohio Supreme Court has explained,

> In an abuse of process case, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.

*Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996) (quoting Prosser & Keeton, *The Law of Torts* § 121, at 898 (5th ed. 1984)); *see also Wolfe v. Little*, *C.A.*, No. 18718, 2001 Ohio App. LEXIS 1902, at *7 (Ohio Ct. App. Apr. 27, 2001) ("In order to show the process was perverted to accomplish an ulterior purpose, the Appellants must show both an act committed during the process that was not proper in the normal conduct of the proceeding and the Appellees' ulterior motive.").

The Defendants argue that the Plaintiff's abuse of process claim should be dismissed because the Plaintiff has not identified an ulterior purpose behind the Defendants' pursuit of the default judgment in the foreclosure action. The Court agrees. The Plaintiff has done no more than to plead that the Defendants had "an ulterior purpose for which the proceeding was not designed." This does not satisfy *Twombly*, and the Court **GRANTS** the Defendants' motion to dismiss Count V.

### I. Count VI (Conspiracy)

In Ohio, "[t]he tort of civil conspiracy is a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams*, 700 N.E.2d at 868 (quotations omitted). Civil conspiracy has four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (adopted by *Williams*, 700 N.E.2d at 868).

The Defendants argue that this claim should be dismissed because the complaint contains no allegations concerning the first and second elements and because Ohio does not recognize a claim for civil conspiracy to suborn perjury. The Court finds that the complaint contains sufficient facts from which to infer that the Plaintiff's conspiracy claim is based upon an agreement between the two Defendants to suborn perjury through the Neeley affidavit. Nevertheless, the Court concludes that Ohio does not recognize the tort of civil conspiracy based on subornation of perjury. *See Costell v. Toledo Hosp.*, 527 N.E.2d 858, 860 (Ohio 1988) ("As to the case before us, appellants have essentially set forth allegations constituting perjury,

18

subornation of perjury, and conspiracy to commit perjury, all of which are punishable under the criminal statutes but which, for public policy reasons, may not be the basis of a civil lawsuit."). *Accord Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App. 3d 40, 51 (Ohio Ct. App. 2009); *Masek v. Marroulis*, 2007 Ohio 6159, P42 (Ohio Ct. App. 2007) (collecting cases). The Court therefore must **GRANT** the Defendants' motion to dismiss Count VI.

### J. Count VII (Declaratory Judgment)

The Plaintiff seeks a declaration on the following issue: "Whether the Affidavit was executed in accordance with the law, and thus whether it was valid and could be considered by the court in the Foreclosure Action." The Defendants only argue that this count is barred by res judicata. For the reasons discussed *supra*, the Defendants' argument is unpersuasive. Their motion to dismiss Count VII is **DENIED**.

### K. Count VIII (Rescission)

The Plaintiff states in Count VII that he "elects to rescind the promissory note and deed to secure debt due to Defendant Citibank's fraud." The Defendants argue that rescission is a remedy, not a cause of action, and the claim must therefore be dismissed. The Defendants are correct that rescission is a remedy, not a free-standing claim. *See Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 797 (6th Cir. 2009) (citing Ohio law). The Court accordingly **GRANTS** the Defendants' motion as to Count VIII.[10]

### L. Count IX (RESPA)

Congress passed RESPA in order to reform the real estate settlement process. The purpose of the statute was to insure that consumers were "provided with greater and more timely

---

[10] The Court notes, however, that the Plaintiff's inclusion of Count VIII has preserved his election of remedies should he succeed on a claim for which rescission is available.

information on the nature and costs of the settlement process" and "protected from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a).

The Plaintiff claims that the Defendants violated RESPA by "likely accept[ing] charges for the rendering of real estate services which were in fact charges for services not performed" and for "likely fail[ing] to provide all relevant accounting documents to Plaintiff." The Defendants challenge this count on several grounds, including failure to plead sufficient facts and expiration of the statute of limitations. The Court finds the Defendants' *Twombly* argument persuasive. Not only did the Plaintiff fail to indicate the charges or the documents at the root of the Defendants' tort, the Plaintiff has only alleged that the Defendants "likely" accepted charges for services not performed and "likely" failed to provide relevant documentation. Such assertions do not provide adequate notice to the Defendants of the basis of the Plaintiff's claims and must be dismissed. The Court **GRANTS** the Defendants' motion to dismiss Count IX.

## M. Count X (Injunction)

The Defendants argue that the Plaintiff's claim for an injunction should be dismissed for the same reason as his claim for rescission should be dismissed: that an injunction is a remedy, not a cause of action. *See Reyes v. Wilson Mem. Hosp*., 102 F. Supp. 2d 798, 801 n.1 (S.D. Ohio 1998) (noting that claim for injunction "does not constitute a separate legal claim for relief"); *Chesner v. Stewart Title Guar. Co*., NO. 1:06CV476, 2006 U.S. Dist. LEXIS 57356 (N.D. Ohio Aug. 4, 2006) ("Because the Court finds that Injunctive relief is a remedy, should Plaintiffs prevail, and the Court further finds Plaintiffs' Complaint alleges the practice of nondisclosure of the discounted rate is ongoing, the Court grants Defendant's Motion to Dismiss Plaintiffs claim insofar as it purports to state a claim for Injunctive relief."). The Defendants' motion to dismiss

Count X is **GRANTED**. The Plaintiff's claim for injunctive relief shall not be treated as an independent claim.

### N. Count XI (Negligent Supervision)

The Defendants claim that Count XI fails because they did not owe the Plaintiff a duty. The Court concludes that Count XI must be dismissed, but not for the reasons relied upon by the Defendants. The complaint charges the Defendants with liability for negligently supervising Neeley, who was engaged in widespread fraud. In Ohio, the tort of negligent supervision against an employer requires "that the employee is individually liable for a tort or guilty of a claimed wrong against" the plaintiff. *Strock v. Pressnel*, 527 N.E.2d 1235, 1244 (Ohio 1988). As discussed above, the Plaintiffs' state law fraud claim fails because the alleged fraud committed induced the state court, not the Plaintiff, to act. *See, e.g., Hayes*, 2003 U.S. Dist. LEXIS 10712 at *17. Because the underlying tort fails, the negligent supervision claim fails. *See Strock*, 527 N.E.2d at 1244. The Defendant's motion is accordingly **GRANTED.**

### O. Count XII (Breach of Covenant of Good Faith and Fair Dealing)

The Plaintiff alleges that the Defendants breached the covenants of good faith and fair dealing in the performance of the mortgage contract. The Defendants first argue that this count fails under *Twombly*. The Court disagrees. The Plaintiffs' enumerated allegations are specific enough to withstand *Twombly* and provide the Defendants with notice of the basis of the Plaintiff's claim.

Second, the Defendant's argue that the claim fails because the Plaintiff has not alleged a breach of contract. In Ohio, the covenant of good faith and fair dealing does not exist independently but only attaches to a contractual relationship. *See Eves v. AIG, Inc.,* No. 2:09-cv-00543, 2010 U.S. Dist. LEXIS 25403, *6 (S.D. Ohio Feb. 22, 2010) (Marbley, J.) ("Ohio courts

have generally held that a duty of good faith arises from the contractual relationship . . . .");
*Westwinds Dev. Corp. v. Outcalt*, 2009 Ohio 2948, P89 (Ohio Ct. App. 2009) (noting that claim
for breach of covenant of good faith "does not stand alone as a separate cause of action from a
breach of contract claim"). A breach of contract claim in Ohio has four elements: (1) the
existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) the
existence of damages. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006)
(interpreting Ohio law); *Nat'l City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598, 603
(Ohio 1953).

The Defendants argue that the Plaintiff has not pled the second element, that he
performed under the note, and that the claim must therefore be dismissed. The Plaintiff has,
however, pled that he sought and was granted a modification from the Defendants on the note. A
modification of a contract's term is equivalent to a waiver of the original term. *See White Co. v.
Canton Transp. Co.*, 131 Ohio St. 190, 198 (Ohio 1936); Restatement (Second) of Contracts §
278(1) (1981) ("If an obligee accepts in satisfaction of the obligor's duty a performance offered
by the obligor that differs from what is due, the duty is discharged."). If the Defendants did in
fact agree to a modification of the terms of the Plaintiff's performance under the note, then the
Plaintiff has met the second element of his claim. The Plaintiff's pleading of a modification is
therefore sufficient at this stage.

The Defendants also argue that the Plaintiff did not allege that the Defendants breached
the terms of the note. The Plaintiff has, however, pled that the Defendants did not comply with
the valid modifications to the note and that the Defendants failed to service the mortgage in
accordance with the note, among other alleged breaches. The Plaintiff's enumerated list of the
Defendants' breaches suffices.

The Plaintiff has therefore pled all of the necessary elements of his good faith claim, and the Court **DENIES** the Defendants' motion to dismiss Count XII.

### P. Count XIII (FCRA)

The Plaintiff alleges that Defendant Citibank wrongfully reported negative information concerning the Plaintiff to credit reporting agencies. The Defendants argue that the Plaintiff has failed to plead all of the elements of an FCRA claim.

The Fair Credit Reporting Act is remedial legislation, which is to be liberally construed in favor of consumers. *See Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961 (6th Cir. 1998). Simply stated, FCRA regulates the communication of consumer reports by credit reporting agencies. 15 U.S.C. § 1681 *et seq*. The FCRA places specific requirements upon individuals and entities that qualify as consumer reporting agencies when they communicate consumer information that constitutes a "consumer report" under FCRA. *Id*.

One such requirement is that "furnishers of credit information" must "report accurate information to consumer reporting agencies regarding a consumer's credit." *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 358 (6th Cir. 2005) (citing 15 U.S.C. § 1681s-2(a)(1)(A)). If a consumer disputes the accuracy of information furnished to a credit reporting agency, the furnisher is obligated to investigate the dispute and correct any inaccuracies discovered. *Id*. (citing 15 U.S.C. § 1681s-2(b)(1)(A)–(D)). A plaintiff alleging violations of § 1681s-2(b) may bring a private cause of action to enforce his rights against the furnisher, *id.*, but only if the plaintiff can "show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed," *Downs v. Clayton Homes, Inc*., 88 Fed. App'x 851, 853–54 (6th Cir. 2004) (citing *Young v. Equifax Credit Info. Servs., Inc.,* 294 F.3d 631, 639–40 (5th Cir. 2002)).

In this case, the Plaintiff has not alleged that he disputed the accuracy of the information the Defendants reported or that the Defendants received notice from a credit reporting agency of the dispute. The Plaintiff has therefore failed to plead all of the necessary elements of an FCRA claim. *See Downs*, 88 F. App'x at 854 ("In this case, the [plaintiffs] did not allege that they had filed a dispute with a credit reporting agency. Accordingly, they had no claim under the FCRA."); *Bridge v. Ocwen Fed. Bank*, 669 F. Supp. 2d 853, 861–62 (N.D. Ohio 2009) (granting motion to dismiss § 1681s-2(b) claim because plaintiff had "not alleged compliance with the statutory notice requirements"). The Court accordingly **GRANTS** the Defendants' motion to dismiss Count XIII.

## Q. Count XIV (Wrongful Foreclosure)

The Plaintiff alleges that Defendant Citibank is liable for wrongful foreclosure because it filed an affidavit that it knew to be false, causing the improper foreclosure on the Plaintiff's home.

The Court has been unable to find any Ohio cases in which a plaintiff brought a free-standing claim for wrongful foreclosure. Wrongful foreclosure claims are typically brought together with foreclosure actions. *See Home Bank, F.S.B. v. Papadelis*, 2006 Ohio 5453, *P7 (Ohio Ct. App. 2006); *Sav. of Am., N.A. v. Cincinnati Ins. Co.*, NO. CA94-03-059, 1994 Ohio App. LEXIS 6041 (Ohio Ct. App. Dec. 30, 1994); *First Federal Sav. & Loan Asso. v. Perry's Landing, Inc.*, 11 Ohio App. 3d 135, 138 (Ohio Ct. App. 1983). From this, the Court discerns that "wrongful foreclosure" under Ohio law describes not a discrete claim with specific elements but a collection of challenges to a foreclosure action. *Cf. Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 U.S. Dist. LEXIS 35618, * (N.D. Ohio Mar. 31, 2011) (granting defendant's

motion to dismiss wrongful foreclosure claim because it "cannot be a cause of action, only an affirmative defense").

The Plaintiff offers no guidance on the legal basis for his "wrongful foreclosure" claim, and the Court can detect none. Even if the Court interpreted the claim as one for malicious prosecution, the claim would, as the Defendants point out, be missing the element of a termination of the prior proceedings in the Plaintiff's favor. *See Robb v. Chagrin Lagoons Yacht Club*, 662 N.E.2d 9, 11 (Ohio 1996) (syllabus) (stating elements for malicious prosecution claim).

For these reasons, the Defendant's motion to dismiss Count XIV is **GRANTED**.

### R. Count XV (Libel)

The Plaintiff alleges that Defendant Citibank intentionally reported incorrect information to the credit reporting agencies. According to the Plaintiff, the Defendant reported the fact that it had foreclosed upon his home, a fact that was false because the foreclosure was improper. The Plaintiff claims that these actions render the Defendant liable for libel.

"In Ohio, 'libel' is defined generally as a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1289 (Ohio 1995). In the case *sub judice*, the Plaintiff's libel claim fails the first element: falsity. The Plaintiff has not alleged that the fact that the Defendant obtained a foreclosure judgment against the Plaintiff is false, only that the foreclosure judgment was improper. In other words, assuming the truth of the Plaintiff's allegation that the Defendant reported the outcome of its foreclosure action to the credit agencies, the Plaintiff has not shown

that the Defendant made a "false written publication." The Court must accordingly **GRANT** the Defendants' motion to dismiss Count XV.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. The Court hereby **DISMISSES WITHOUT PREJUDICE** Counts I, II, III, IV, V, VI, VIII, IX, X, XI, XIII, XIV and XV. Counts VII (declaratory judgment) and XII (breach of covenant of good faith and fair dealing) shall proceed to discovery.

**IT IS SO ORDERED.**

/s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE:** September 27, 2011