# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ADAM P. HAMMOND, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:10-CV-1071 |
| | : | |
| v. | : | JUDGE ALGENON L. |
| | : | MARBLEY |
| CITIBANK, N.A., et al., | : | |
| | : | Magistrate Judge Mark R. Abel |
| Defendants. | : | |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Adam P. Hammond ("Plaintiff" or "Hammond") brings this action for claims arising out of a state foreclosure action. Defendants Citibank, N.A. ("Citibank") and Wells Fargo Bank, N.A. ("Wells Fargo"), (collectively referred to as "Defendants"), now move for summary judgment on the two remaining claims in this action. For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED**.

### II. BACKGROUND

Plaintiff owned property in Licking County, Ohio, at 3309 Mounts Road, Alexandria, Ohio. On April 30, 2010, Citibank initiated a foreclosure action against Plaintiff in the Licking County Court of Common Pleas. Citibank's foreclosure complaint alleged that Plaintiff had executed a note and mortgage against the 3309 Mounts Road property, and defaulted on the note, and that Citibank was entitled to recover the balance due on the note and foreclose on the mortgage. Plaintiff did not file an answer or otherwise respond to Citibank's complaint, and Citibank moved for default judgment on June 7, 2010.

In support of its motion for default judgment, Citibank introduced the affidavit of Anne Neely, who stated that she was a Vice President of Loan Documentation with Wells Fargo, the servicing agent for Citibank. (Compl. Ex. A.) Neely swore she had personal knowledge of Plaintiff's loan. She also stated that the loan was in default, Citibank had accelerated the entire debt to be due and payable, and the principal balance owed was $207,192.24. (*Id.*)

The state court granted the motion for default judgment on June 7, 2010. Plaintiff did not appeal that judgment. The 3309 Mounts Road property was sold at a sheriff's sale on October 20, 2010, and the state court confirmed the sale on November 15, 2010. Plaintiff did not contest the sale, or object to or appeal the confirmation order.

Plaintiff filed this action on November 29, 2010, alleging that Neely was a "robo-signer," or a person whose job is to sign affidavits and other legal documents used in foreclosures *en masse*. According to Plaintiff, robo-signers may sign more than 10,000 such documents per month. To keep up this pace, robo-signers frequently sign documents without reading them and outside of the presence of a notary. Plaintiff alleges that a number of Neely's statements in her affidavit are false.[1]

Plaintiff's Complaint contained 15 causes of action. (Compl. ¶¶ 23–89.) This Court dismissed all but two of those causes of action in a September 27, 2011, Opinion and Order. (Doc. 26.) The remaining claims are Counts VII and XII. Count VII is for declaratory judgment against Citibank. Plaintiff alleges that a justiciable controversy exists with respect to whether Neely's affidavit was executed in accordance with the law and therefore, whether it was valid and could be considered by the state court in the Foreclosure Action. If this Court makes a

---

[1] The Ohio Attorney General initiated a lawsuit in state court challenging the widespread use of robo-signers. In a letter sent to the Ohio Common Pleas judges, the Attorney General named Wells Fargo as a bank known to rely heavily on robo-signers in its foreclosure actions.

determination that the Neely affidavit was not executed in accordance with the law, Plaintiff urges this Court to declare the foreclosure action null and void and set aside the default judgment entered against Plaintiff.

Count XII is a claim brought against both Defendants for breach of a covenant of good faith and fair dealing. Plaintiff alleges that Defendants were obligated under either contract or common law to act in good faith and deal fairly with Plaintiff, and that Defendants breached that duty by: (1) failing to perform loan servicing function consistent with their responsibilities; (2) failing to properly supervise their respective agents and employees, including, but not to, Neely, its loss mitigation and collection personnel, its foreclosure attorneys, and default servicers; (3) routinely making promises for modification figures when in fact they knew modifications would not be granted; (4) making inaccurate calculations and determinations of Plaintiff's obligations and debt; (5) failing to follow through on written, verbal, and implied promises; and (6) failing to give Plaintiff the promised modification.

In addition to the present action, Plaintiff filed a Motion for Relief From Judgment under Ohio Rule of Civil Procedure 60(B) ("60(B) Motion") in the state court on December 6, 2010. In that Motion, Plaintiff contended that the state court judgment should be set aside because, *inter alia*, the Neely's affidavit contained material false and fraudulent statements, and the foreclosure action was contaminated by fraud because Citibank likely approved of Wells Fargo's fraudulent conduct in order to expedite the foreclosure process. (Doc. 31-5.) The state court denied the 60(B) Motion, without providing reasoning, on December 20, 2010. (Doc. 31-6.)

This Court heard oral argument from the parties on May 24, 2012, and Defendants' Motion for Summary Judgment is now ripe for review.

3

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant, therefore, has the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The central inquiry is "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. If the moving party meets its burden, then the non-moving party is under an affirmative duty to point out specific facts in the record, which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-moving party may not rest merely on allegations or denials in its own pleadings, *see Celotex*, 477 U.S. at 324, but must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts," *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

"[A]t the summary judgment stage the judge's function is not himself to weigh evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v.*

*Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the court may rely on the evidence called to its attention by the parties. *Id.*

## IV. LAW AND ANALYSIS

### A. Declaratory Judgment (Count VII)

Citibank advances three reasons why Plaintiff's declaratory judgment claim should fail. First, Citibank argues there is no "actual controversy" as required under the Declaratory Judgment Act, 28 U.S.C. § 2201, because the state court already decided the controversy of whether its previous judgment should be set aside when it denied Hammond's 60(B) Motion. Next, Citibank argues that the Declaratory Judgment Act only empowers district courts to declare "rights and other legal relations" of the party seeking a declaration, and a declaration about whether the affiant in a state court proceeding had personal knowledge of facts does not fall into that category. Finally, Citibank argues that any request to declare the state court judgment void or set it aside is barred by the *Rooker-Feldman* doctrine and by the Anti-Injunction Act, 28 U.S.C. § 2283.

In his Memorandum in Opposition, Plaintiff fails to respond to Citibank's arguments related to Count VII. (Doc. 40.) The only exhibit attached to Plaintiff's Memorandum in Opposition is Hammond's affidavit. (Doc. 40-1.) Hammond's affidavit does not contain information relevant to his declaratory judgment claim. For example, it does not contain information about whether Neely's affidavit was executed in accordance with the law. In reply, Citibank contends that summary judgment in its favor is mandated as a result of Plaintiff's failure to respond.

This Circuit has held that failure to respond to a motion for summary judgment warrants granting that motion. *See Locke v. Commercial Union Ins. Co.*, 676 F.2d 205, 206 (6th Cir.

1982) (per curiam) ("[P]laintiff's failure to responds as required by Rule 56(e), Fed. R. Civ. P., or to file an affidavit sufficient to satisfy Rule 56(f) made summary judgment appropriate."); *Kendall v. Hoover Co.*, 751 F.2d 171, 173 (6th Cir. 1984) (finding plaintiff's argument concerning the unsuitability of summary judgment without merit where "plaintiff did nothing more than to state his conclusion that he was terminated because of his age"). Moreover, Federal Rule of Civil Procedure 56(e) allows a court to grant summary judgment if a movant is so entitled where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact."

Plaintiff has offered no arguments in opposition to Citibank's arguments that Count VII should be dismissed. As a result, summary judgment as to Count VII is **GRANTED** in Defendants' favor.

### B. Breach of Covenant of Good Faith and Fair Dealing (Count XII)

Defendants advance multiple arguments, however, in support of their position that Plaintiff's claim for breach of a covenant of good faith and fair dealing should fail. Each will be addressed in turn.

*1. Absence of a Contract Between Hammond and Wells Fargo*

Defendants' opening argument is that there can be no claim for breach of covenant of good faith and fair dealing against Wells Fargo because there was never a contract between Hammond and Wells Fargo,[2] and because a claim for breach of a covenant does not exist independently from a claim for breach of contract. An affidavit by Robert Bateman—also a Vice President of Loan Documentation employed by Wells Fargo—is offered by Wells Fargo to support its position that there is no contract. Bateman testifies in his affidavit that he has

---

[2] Defendants do not contest the fact that there was a contract between Hammond and Citibank.

reviewed Wells Fargo's computer and paper records that concern Hammond's loan created and maintained in the ordinary course of Wells Fargo's business, and there is no evidence of a contract between Wells Fargo and Hammond.

In response, Plaintiff contends that there is a question of fact as to whether a contract exists. Plaintiff does not, however, produce or attach a contract to his Memorandum in Opposition. Rather, he argues that because he believed Wells Fargo was enforcing his note, and because Wells Fargo did, in fact, attempt to enforce the express terms of that note, Wells Fargo had a duty to abide by a covenant of good faith and fair dealing. Plaintiff also argues that because Wells Fargo was acting as Citibank's agent, there is a question of material fact as to whether the agency relationship would make both Citibank and Wells Fargo liable for a breach of covenant of good faith and fair dealing.

Ohio law requires privity of contract to maintain an action for breach of contract. *Zona v. Lincoln Log Homes, Inc.*, No. 95-4355, 1999 WL 282666, at *2 (6th Cir. April 30, 1999) (string citations omitted); *Cincinnati, Hamilton & Dayton R.R. Co. v. Metro. Nat. Bank*, 42 N.E. 700, 701–02 (Ohio 1896). A covenant of good faith and fair dealing generally does not exist independently, but only attaches where there is a contractual relationship. *Eves v. AIG, Inc.*, No. 2:09-cv-0543, 2010 WL 749925, at *2 (S.D. Ohio Feb. 22, 2010) (Marbley, J.) (explaining that Ohio courts have generally held that a duty of good faith arises from a contractual relationship in the insurance context); *Eastham v. Nationwide Mut. Ins. Co.*, 586 N.E.2d 1131, 1133 (Ohio App. Ct. 1990) ("We believe that liability for bad faith must be strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of the underlying contractual relationship"); *Westwind Dev. Corp. v. Outcalt,* 2009-Ohio-2948, 2009 WL 1741978, at *11 (Ohio Ct. App. June 19, 2009) (finding that dismissal of vendor and builder's breach-of-contract claim against

7

purchasers of subdivision lot precluded vendor and builder from maintaining claim based on alleged breach of implied covenant of good faith because implied covenant does not stand alone as a separate cause of action); *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, at *5 (Ohio Ct. App. Mar. 16, 2006) ("Appellant's complaint failed to allege a breach of contract, a requirement for an alleged breach of the implied covenant of good faith and fair dealing"). A purported breach of covenant is not an independent tort claim upon which liability can attach. *Holmes v. Wilson*, No. 2:08-cv-602, 2009 WL 3673015, at *3 (S.D. Ohio Oct. 30, 2009) (Marbley, J.) ("Ohio law does not recognize a stand alone claim, tort or otherwise, for bad faith under a contract"); *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-cv-0548, 2007 WL 709335, at *7 (S.D. Ohio Mar. 5, 2007) ("Under Ohio law, there is no tort cause of action for breach of covenant of good faith that is separate from a breach of contract claim, and, if a breach of duty of good faith and fair dealing is asserted as part of a contract claim, it must be alleged as part of that contract count, and may not stand alone.") (citations omitted).

Plaintiff does not present a contract or evidence of a contract, nor does he offer any applicable exception to the general rule that a claim for breach of covenant of good faith and fair dealing can only be maintained where a contract exists between the parties. Plaintiff cannot rely on his subjective belief that Wells Fargo was enforcing his note with Citibank to support his claim for breach of covenant of good faith and fair dealing.

Equally unconvincing is Plaintiff's argument that agency principles between Wells Fargo and Citibank create a material fact as to whether both Wells Fargo and Citibank can be held liable for breach of covenant of good faith and fair dealing. Plaintiff cites case law supporting only the proposition that a principal and agent can be held jointly and severally liable for the tortious actions of the agent; that case law says nothing about principal and agent liability in the

context of *contract* law. (*See* Doc. 40) (citing *Losito v. Kruse*, 24 N.E.2d 705, 706 (Ohio 1940) (discussing agent and principal liability in the context of torts committed by an agent); *Herron v. City of Youngstown*, 24 N.E.2d 708 (Ohio 1940) (no discussion of agency principles in relation to a contract law)).

Under Ohio law, "[a]n agent who acts for a disclosed principal and who acts within the scope of his authority and in the name of the principal is ordinarily not liable on the contracts he makes." *James G. Smith & Assocs., Inc. v. Everett*, 439 N.E.2d 932, 935 (Ohio Ct. App. 1981) (citations omitted); *cf. Illinois Controls Inc. v. Lagham*, 639 N.E.2d 771, 781–82 (Ohio 1994) ("Where a contract is made in furtherance of the interests of an undisclosed principal, both the principal and the agent are liable for breach of its underlying obligation."). It is clear from Plaintiff's Complaint that he was aware Wells Fargo was acting as a servicing agent for Citibank. (Compl. ¶ 9.) Therefore, even if Plaintiff is alleging Wells Fargo entered into an oral agreement with Plaintiff while attempting to enforce Citibank's note, such a claim would be unpersuasive because Wells Fargo was acting on behalf of a disclosed principal.

Therefore, Defendants' Motion for Summary Judgment as to Count XII for breach of covenant of good faith and fair dealing with respect to Wells Fargo is **GRANTED**.

### 2. Claim Preclusion and Issue Preclusion

Defendants' next argument is that to the extent Plaintiff's claim is based on events that predated the state court judgment, it should be barred by the doctrines of issue and claim preclusion. Because this Court granted summary judgment with respect to Plaintiff's breach of covenant claim as to Wells Fargo, only Plaintiff's breach of covenant claim against Citibank remains.

### a. Claim Preclusion

Citibank argues that Count XII seeks to hold it liable under the same contract that the state court already adjudicated and found Hammond breached in the foreclosure action. Citibank argues that because the state court entered a final judgment in the foreclosure action, it "fully adjudicated the loan transaction and relationship between Citibank and Mr. Hammond, determining the terms of the loan, that Citibank was a party entitled to enforce the Note and Mortgage, that Mr. Hammond had breached the parties' contract, and that Citibank was entitled to judgment based upon the parties contractual relationship." (Doc. 31.)

Plaintiff retorts that this Court already decided his breach of covenant of good faith and fair dealing claim was not barred by the doctrine of claim preclusion when it decided Defendants' Motion to Dismiss. Plaintiff also argues that under Ohio law, claim preclusion applies where there is no evidence of fraud or collusion, and in arguing the doctrine of claim preclusion applies here, Citibank ignores Hammond's repeated allegations of fraud. (Doc. 40.)

Under Ohio law, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Township*, 653 N.E.2d 226, 227 (Ohio 1995). A "'transaction' is defined as a 'common nucleus of operative facts.'" *U.S. Bank Nat'l Ass'n v. Gullotta*, 899 N.E.2d 987, 991 (Ohio 2008) (quoting *Grava*, 653 N.E.2d at 229).

This Court previously held in this action, with respect to Count XII and other counts that remained at that time, that the "subject matter of the foreclosure action was the liability of the parties on the Plaintiff's mortgage," while the "subject matter of the instant suit, in contrast, is the liability of the Defendants for the submission of the allegedly fraudulent affidavit." (Doc. 26.) "These two suits, then, do not arise out of the same nucleus of operative facts," and "claim

10

preclusion does not now bar the Plaintiff's claims based on the fraudulent affidavit." (*Id.*) Citibank is making an argument that this Court already rejected at the Motion to Dismiss stage. Citibank's argument that claim preclusion bars Plaintiff's breach of covenant claim remains unpersuasive.

### b. Issue Preclusion

Citibank also argues that Count XII is barred under the issue preclusion doctrine. The state court already determined that Plaintiff breached his obligation under the note, and therefore, Plaintiff cannot show a necessary element of his breach of contract claim: performance. Because a breach of covenant of good faith and fair dealing claim does not exist independent from a contract claim, Plaintiff's breach of covenant claim necessarily fails. Plaintiff retorts that this Court also already decided his breach of covenant of good faith and fair dealing claim was not barred by the doctrine of issue preclusion when it decided Defendants' Motion to Dismiss. Plaintiff also argues, as he did with respect to the doctrine of claim preclusion, that under Ohio law, issue preclusion cannot apply here because there are allegations of fraud.

This Court previously held that it could not conclude issue preclusion bars Plaintiff from litigating whether the Neely affidavit was fraudulent. That finding was made in the context of the state court's decision on the 60(B) Motion. This Court reasoned that the state court's basis for rejecting the 60(B) Motion was unclear since no explanation was provided by the Court. "Because the state court did not explain the basis for its rejection of the Plaintiff's motion, and because there was alternative basis for the Court's ruling, it cannot be said with certainty that the issue was actually passed upon by the state court." (Doc. 26) (citations omitted).

Citibank is making a different, two-prong, issue preclusion argument here. First, Citibank is arguing that the state court already determined Plaintiff breached his obligation under

11

the note in the foreclosure action, which precludes this Court from deciding that issue. Second, because of the finding that Plaintiff did not perform under the contract, Plaintiff cannot maintain a breach of contract claim, and, therefore, cannot maintain a breach of covenant of good faith and fair dealing claim.

A breach of contract claim under Ohio law has four elements: (1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) damages. *Pavlovick v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law); *Nat'l City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598, 603 (Ohio 1953). In addition to identifying a contract, a plaintiff alleging a claim for breach of covenant of good faith and fair dealing, must first establish a claim for breach of contract. *See Walter v. Wells Fargo Bank, NA*, No. 2:11-cv-912, 2012 WL 641949, at *4 (S.D. Ohio Feb. 28, 2012) (citing *McCubbins v. BAC Home Loan Serv., L.P.*, No. 2:11-cv-547, 2012 WL 140218, at *5 (S.D. Ohio Jan. 18, 2012)) (explaining that under Ohio law, "a claim for a violation of the duty of good faith and fair dealing cannot stand alone as a separate cause of action apart from a claim for breach of contract"); *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996) (same). The case law indicates, therefore, that where a plaintiff did not perform under a contract and cannot establish a breach of contract claim, the plaintiff cannot maintain a cause of action for breach of covenant of good faith and fair dealing. In this case, the state court did, indeed, make a determination that Hammond did not perform under the note, and under Ohio law, such a finding would indicate that Hammond is unable to maintain a breach of contract claim and, therefore, also unable to maintain a breach of covenant claim.

The analysis does not end there, however. In this Court's prior September 27, 2011, Opinion and Order, Defendants made a similar argument that was rejected at the Motion to

Dismiss stage. In his complaint, Plaintiff alleged that "he sought and was granted a modification from the Defendants on the note," and that "a modification of a contract's terms is equivalent to a waiver of the original note." (Doc. 26.) This Court reasoned that "[i]f the Defendants did in fact agree to a modification of the terms of the Plaintiff's performance under the note, then Plaintiff has met the second element of [a breach of contract] claim." (*Id.*) This Court held the pleading of a modification with respect to Plaintiff's breach of covenant claim was sufficient to withstand Defendants' Motion to Dismiss.

Merely pleading modification, however, is not enough at the summary judgment stage. *See Celotex*, 477 U.S. at 324 (explaining that the non-moving party may not rest merely on allegations or denials in its own pleadings); *Moore*, 8 F.3d at 340 (noting that, at the summary judgment stage, the non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts"). Plaintiff relies solely on this Court's prior Opinion and Order and allegations in his Complaint to rebut Citibank's arguments. The only evidence offered by Plaintiff is his own affidavit where he states that "Defendants many times promised me a loan modification." (Doc. 40-1.) At the summary judgment stage, this Court finds the affidavit evidence insufficient to establish the existence of a loan modification. *See Wolfe v. Vill. Of Brice, Ohio*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999) (citations omitted) ("Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment.").

Citibank also points out that the statute of frauds requires all modifications to a mortgage to be in writing. In this case, Citibank contends there was never any agreement to modify the loan, let alone one in writing. Plaintiff responds that the doctrine of promissory estoppel removes this matter from the statute of frauds, contending that Citibank unequivocally promised

13

Plaintiff that if he quit paying his mortgage, they would give him a loan modification. Plaintiff argues he is not seeking to enforce an oral modification but a breach of an oral agreement to modify.

Under Ohio law, the statute of frauds requires all mortgage modifications to be in writing in order to be enforceable. Ohio Rev. Code 1335.02(B) ("No party to a loan agreement may bring an action on a loan agreement unless the agreement is in writing.") An alleged oral modification to a mortgage is insufficient to satisfy the statute of frauds. *See Lamkin v. First Community Bank*, Franklin App. No 00AP-935, 2001 Ohio App. LEXIS 1450, at *20–23 (Ohio Ct. App. Mar. 29, 2001). Furthermore, the Supreme Court of Ohio has held that "[a] party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds, which requires that an enforceable contract must be in writing and signed by the party to be charged." *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 909 N.E.2d 93, 95–96, ¶ 2 syllabus (Ohio 2009). Plaintiff has not presented any *written* loan modification or promise to modify. Under Ohio law, the doctrine of promissory estoppels is of no help to Plaintiff.[3]

Finally, this Court must address Plaintiff's contention that, under Ohio law, preclusion doctrines do not apply because Plaintiff has alleged fraud.[4] As explained above, allegations of

---

[3] Citibank also argues that there is no evidence that Hammond provided any consideration for Citibank to modify the note. Plaintiff responds that Citibank's refusal to take Plaintiff's money cannot be used against him in a summary judgment motion since Plaintiff offered Defendants money after they promised him a loan modification on many occasions. It is unnecessary for this Court to opine on this issue in light of the reasoning set forth in the body of this Opinion and Order, but this Court will note that there is Ohio case law that supports Citibank's position. *See, e.g.*, *Andrews v. Campbell*, 36 Ohio St. 361, 367 (1881) (finding new and valuable consideration is required to modify a loan).

[4] Plaintiff does not specify which "allegations of fraud" he is referring to in his Memorandum of Opposition—allegations related to the loan modification or related to the Neely affidavit. Because the Neely affidavit has nothing to do with Plaintiff's own performance under the note, this Court will assume Plaintiff is referring to the "allegations of fraud" associated with the loan modification.

fraud are not enough at this stage in the litigation, and Plaintiff has not presented any persuasive evidence of fraud to this Court. *See Celotex*, 477 U.S. at 324; *Moore*, 8 F.3d at 340. At the motion to dismiss stage, this Court held that if Plaintiff presented evidence of a loan modification, such a modification would be the equivalent of obtaining a waiver of the original terms of the note. But Plaintiff has failed to present that evidence at the summary judgment stage, and as a result, he is unable to show that he performed under the note. His allegations of fraud, therefore, are no longer sufficient to avoid the reach of preclusive doctrines.

This Court is precluded from deciding whether Hammond failed to perform under the note because that issue was already decided by the state court. Plaintiff has offered no persuasive evidence to support his allegations of a loan modification or promise to modify, and therefore, can no longer maintain his breach of covenant of good faith and fair dealing claim. Defendants' Motion for Summary Judgment with respect to Count XII against Citibank is **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                                    /s/Algenon L. Marbley
                                                    **ALGENON L. MARBLEY**
                                                    **United States District Court Judge**

**DATE: September 12, 2012**